IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICK FEHLMAN,

                Plaintiff,

v.

JAMES MANKOWSKI,

                Defendant.

OPINION and ORDER

21-cv-362-jdp

---

    This First Amendment retaliation case grew from the contentious relationship between two officers who both served as the chief of police for Neillsville, Wisconsin, a small town located between Eau Claire and Stevens Point. Plaintiff Patrick Fehlman was the interim police chief from February 2019 until defendant James Mankowski—an outside hire—took over in December 2019. Fehlman doesn't say whether he and Mankowski competed for the permanent position, but Fehlman's complaint makes it clear that they didn't get along.

    Fehlman remained with the department after Mankowski became chief, but Fehlman wasn't pleased with Mankowski's performance. And Fehlman wasn't shy about his feelings, telling Mankowski that the way he ran the department was violating state law and jeopardizing officer safety. When Mankowski didn't change his ways, Fehlman and some other officers took their concerns to the Police and Fire Commission, alleging that Mankowski was unprofessional to staff and verbally abusive to citizens, among other things.

    According to Fehlman, Mankowski confronted him a few days later, threatening to discipline him for going to the commission. The following day, Fehlman quit. Fehlman now accuses Mankowsi of retaliating against him in violation of the First Amendment by

threatening him, attempting to interfere with his efforts to find a new job, and banning him from entering the department.

Mankowski moves to dismiss the case for failure to state a claim upon which relief may be granted. Dkt. 13. The question before the court isn't whether Mankowski attempted to sabotage Fehlman's job prospects, or, if he did, whether it was because Fehlman spoke out against him. Rather, the issue now is whether Fehlman was speaking as a police officer or a citizen when he complained to and about Mankowski. The difference matters because, under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), a public employee's speech made pursuant to his official duties isn't protected by the First Amendment, no matter how important that speech may be or how it could affect the public interest.

*Garcetti* and the Seventh Circuit cases applying it doom Fehlman's claim, even if everything that Fehlman alleges is true. All of the speech at issue in this case was either a statement to a supervisor about issues affecting the workplace or a complaint to an oversight body about how the supervisor was performing his job. Under the law of this circuit, that is employee—not citizen—speech, even if the speech was motivated in part by concern for the community. The court will grant Mankowski's motion to dismiss.

ANALYSIS

Fehlman's claim for retaliation arises out of two categories of statements. First, Fehlman alleges that he directly confronted Mankowski over the course of several months in 2020 about concerns that Fehlman had about Mankowski's performance as chief. Fehlman identifies the following examples of the concerns that he expressed to Mankowski:

- The department needed more bullet-proof vests for officers.

- Mankowski's decision to stop writing reports for accidents that occur on private property violated state law.

- Mankowski's policy regarding issuing citations for operating without a license violated state law.

- Mankowski's decision to change "radio talk procedures" created "officer safety issues."

- Mankowski shouldn't have "prioritized speed limit enforcement over responding to an allegation of child abuse at a school."

Dkt. 8, ¶¶ 9, 17–18.

Second, Fehlman raised additional concerns about Mankowski during a meeting that Fehlman and other officers requested with the Neillsville Police and Fire Commission in late June 2020. Fehlman says that he repeated some of the same concerns as above, and he raised the following additional concerns about Mankowski:

- He lacked professionalism and instilled fear in the officers who worked for him.

- He ordered officers to turn off their body cameras in violation of department policies.

- He was verbally abusive to suspects.

*Id.*, ¶¶ 13–18.[1]

Many of the issues raised by Fehlman involve important public concerns. If Fehlman's allegations are true, Mankowski was violating the law and department policy and mistreating employees and citizens. Those are issues that merit public scrutiny. *See Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006) ("Exposing governmental inefficiency and misconduct is a matter of

---

[1] Fehlman's complaint also refers to a June 30, 2020 department meeting where Fehlman and Mankowski spoke. Dkt. 8, ¶¶ 22–24. But Fehlman doesn't identify any protected statements that he made at the meeting, and he doesn't respond to Mankowski's contention that he failed to provide fair notice of any claim based on the June 30 meeting. So the court doesn't understand Fehlman to be raising a separate claim based on that meeting.

considerable significance."); *Vose v. Kliment*, 506 F.3d 565, 569 (7th Cir. 2007) ("[P]olice misconduct is a matter of public concern.").

But to sustain a claim for retaliation under the First Amendment, a public employee like Fehlman must do more than show that he was speaking out on a matter of public concern. In moving to dismiss the case, Mankowski's primary argument is that Fehlman's claim is barred by *Garcetti*, which holds that the First Amendment protects the speech of public employees only if they were speaking "as a citizen" rather than "pursuant to their official duties." 547 U.S. at 421–22.[2]

In crafting this rule, the Supreme Court was trying to balance a public employee's right to speak with the government employer's ability to function efficiently and effectively. *See id.* at 418–19. The Court reasoned that public employees are also citizens, and they can provide important contributions to public debate on matters on which they are better informed than most. *Id* at 419–20. But speech that "owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.* at 421–22. The parties in *Garcetti* agreed that the plaintiff, a deputy district attorney, was speaking pursuant to his duties when he wrote a memo recommending dismissal of a case based on government misconduct. *Id.* at 421. As a result, the Court concluded that the employee's speech wasn't protected by the First Amendment.

---

[2] Mankowski also contends that Fehlman's complaint doesn't comply with federal pleading standards and that his speech isn't protected because it was motivated by private interests, but it isn't necessary to consider those issues because Mankowski's motion to dismiss can be resolved on other grounds.

Mankowski contends that Fehlman was speaking pursuant to his official duties when he made all the statements at issue in this case, so *Garcetti* bars his claim. Fehlman says that he was speaking as a citizen. Resolving the dispute is complicated somewhat by Fehlman's failure to precisely identify what his job was. Fehlman says that he was the interim police chief before Mankowski became the chief in December 2019. Dkt. 8, ¶ 6. But Fehlman says that he made the relevant statements between March and June 2020, and he doesn't say in his complaint what position he had at that point or what specific duties he had. But neither party suggests that Fehlman retained any supervisory authority after December 2019. Rather, both parties assume in their briefs that Fehlman had the same duties as any police officer working for the Neillsville Police Department. The court will follow the parties' lead. As a result, the question before the court is whether a Neillsville police officer is speaking pursuant to his duties or as a citizen when he: (1) complains directly to the chief that the chief is undermining officer safety and violating the law and department policy; and (2) complains to the Neillsville Police and Fire Commissioner about the same things, as well as that the chief is mistreating his staff and criminal suspects.

*Garcetti* itself provides only limited guidance in deciding this case. The Court emphasized that an employee doesn't speak pursuant to his duties simply because the speech occurred at work or is related to the employee's job. *Id.* at 421. The memo at issue in *Garcetti* was part of the plaintiff's everyday duties; it was literally the employee's work product and thus readily viewed as the government's own speech that it had the right to control. *See id.* at 422 ("Refusing to recognize First Amendment claims based on government employees' work product does not prevent them from participating in public debate."). That is not the situation here. Complaining about alleged misconduct of the police chief isn't part of an officer's normal

5

routine. Although Fehlman doesn't identify what his position with the department was, he does say in his brief that that he wasn't an auditor or head of internal affairs. Dkt. 16, at 9.

But much more judicial ink has been spilled in the years since the Supreme Court decided *Garcetti*. Four post-*Garcetti* trends in the law of this circuit lead to the conclusion that Fehlman's speech in this case isn't protected by the First Amendment. First, the court of appeals has declined to read *Garcetti* as applying only to speech that is part of "a public employee's ordinary daily job duties." *Vose v. Kliment*, 506 F.3d 565, 572 (7th Cir. 2007); *see also Kubiak v. City of Chicago,* 810 F.3d 476, 481–82 (7th Cir. 2016) (*Garcetti* not limited to "routine job duties"). Rather, it is enough if the speech relates to activities that fall "within the general ambit of his job." *Fairley v. Andrews*, 578 F.3d 518, 523 (7th Cir. 2009). It doesn't matter whether the employee had "total control" over the issues he was addressing. *See Ulrey v. Reichhart*, 941 F.3d 255, 260 (7th Cir. 2019).

Second, the court of appeals has consistently held that an employee's complaints to or about supervisors regarding how the agency or department is run owes its existence to the employee's professional responsibilities, so it isn't citizen speech. For example, in *Mills v. City of Evansville, Indiana*, the court concluded that a police sergeant's discussions with her supervisors criticizing a plan to alter the responsibilities of some officers was not protected by the First Amendment. 452 F.3d 646, 648 (7th Cir. 2006). In reaching this conclusion, the court observed that the plaintiff "was on duty, in uniform, and engaged in discussion with her superiors," and the court concluded that she "spoke in her capacity as a public employee contributing to the formation and execution of official policy." *Id.* In other words, an employee's speech disagreeing with supervisors about the direction of the office implicates the

employer's management responsibilities, so it is made as an employee rather than a citizen. *See id*.

The court of appeals has reached the same conclusion in numerous other disputes between a public employee and a supervisor.[3] More generally, the court has held that speech that is part of an attempt to improve the functioning of the workplace is not protected under the First Amendment. *See Kubiak*, 810 F.3d at 482 (complaints that "reflected an employee's attempt to improve her work environment" were made as an employee); *Davis v. Cook Cty.*, 534 F.3d 650, 653 (7th Cir. 2008) (*Garcetti* barred claim based on memo that "reflect[ed] the concern of a conscientious nurse to ensure and contribute to the smooth functioning of the ER and to advocate for the well-being of the patients under her care").

*Mills* and the other cited cases are consistent with the statement in *Garcetti* that courts shouldn't adopt a rule that "mandate[es] judicial oversight of communications between and among government employees and their superiors in the course of official business." 547 U.S. at 423. And Fehlman cites no cases, from this circuit or any other, in which a court concluded that an employee's on-the-job discussions with a supervisor about the management of the office qualify as citizen speech. This strongly suggests that Fehlman's discussions with Mankowski aren't protected.

The third trend in circuit law that undermines Fehlman's claim relates to complaints like Fehlman's that deal with workplace misconduct. Specifically, the court of appeals has

---

[3] *See, e.g., Ulrey*, 941 F.3d at 259 (principal's disagreement with superintendent about disciplinary issue not protected); *Ogden v. Atterholt*, 606 F.3d 355, 360 (7th Cir. 2010) (concluding that employer's complaint to "ultimate supervisor" asking for department to be reorganized was not protected); *Renken v. Gregory*, 541 F.3d 769, 774 (7th Cir. 2008) (teacher's criticism of his superior's use of grant funds provided to his department was speech as an employee, not a private citizen).

consistently held that an employee's complaints about workplace misconduct aren't protected under the First Amendment, even when the employee's express job duties didn't include a duty to report that misconduct. *See, e.g.*, *Hatcher v. Bd. of Trustees of S. Illinois Univ.*, 829 F.3d 531, 539 (7th Cir. 2016), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). Courts must go beyond the job description and apply "a more commonsense, contextual analysis of the role the public employee assumed in making the speech at issue in the case." *Ogden*, 606 F.3d at 360. If an employee's speech about misconduct "affect[s] an area within her responsibility," that is enough to qualify as employee speech. *Hatcher*, 829 F.3d at 539.

Reporting misconduct in the office can be an unstated but expected part of the job for high-level and low-level employees alike. For example, in *Sweet v. Town of Bargersville*, the court concluded that a customer service representative in the clerk-treasurer's office was speaking pursuant to her official duties when she criticized the clerk-treasurer for reconnecting the utility service of a delinquent customer who was the clerk-treasurer's business partner. 18 F.4th 273, 278 (7th Cir. 2021). The court reasoned that the plaintiff's responsibilities included handling customer service for utility disconnections, so her complaint fell within her area of responsibility. *Id.* The court rejected the plaintiff's contention that it was "not her job as a low-level employee to confront a high-ranking elected official about questions of policy." *Id.*[4] In other cases, the court of appeals has suggested that claims based on reporting misconduct

---

[4] *See also Fairley*, 578 F.3d at 523–24 (prison guard's complaint about guard-on-inmate violence was "part of the job" and thus not protected); *Spiegla v. Hull*, 481 F.3d 961, 962 (7th Cir. 2007) (prison guard's complaint about a lapse in security by her supervisor was barred by *Garcetti* because "ensuring compliance with prison security policy was part of what she was employed to do").

8

within the workplace are categorically barred by *Garcetti*. *See also Comsys, Inc. v. Pacetti*, 893 F.3d 468, 471–72 (7th Cir. 2018) ("[I]nternal memos protesting coworkers' misconduct are not protected by the First Amendment."); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1091–92 (7th Cir. 2008) (agreeing with other cases holding "that reports by government employees to their superiors concerning alleged wrongdoing in their government office were within the scope of their job duties, and, therefore, the employees were not speaking as private citizens").

In this case, Fehlman's complaint doesn't discuss his job responsibilities, but in his brief he cites a Neillsville ordinance, which says that an officer's duties include "enforcement" of state and local laws, "prevent[ing]" violations of the law, and "protect[ing] the health, safety, public peace and order of the City and its inhabitants." Dkt. 16, at 11. All of Fehlman's complaints about Mankowski relate to officer safety, protection of the public, compliance with the law, or mistreatment of staff, and those subject matters fall within Fehlman's general responsibilities as described in the ordinance. *See Trigillo v. Snyder*, 547 F.3d 826, 829 (7th Cir. 2008) ("A statute or regulation can help determine the scope of an employee's duties to the extent that it creates responsibilities for that employee's specific job.").

The fourth and final relevant trend in circuit law focuses on police officers, and it forecloses Fehlman's claim. Specifically, the court of appeals has "held on several occasions that a police officer's duty to report official police misconduct is a basic part of the job" for the purpose of a *Garcetti* analysis, so that type of speech isn't protected. *Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017) (citing *Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d 342, 346 (7th Cir. 2017); *Kubiak*, 810 F.3d at 481–82; *Vose*, 506 F.3d at 571). Regardless of the officer's job description, he or she has an inherent duty to protect the public from harm. *Forgue*,

9

873 F.3d at 967. That duty extends to "harm resulting from illegal activity by law enforcement." *Roake*, 849 F.3d at 346–47.

For example, in *Vose*, the court held that a police officer was "merely doing his job," and thus not engaged in protected speech, when he reported suspected misconduct by officers who worked in a different unit. 506 F.3d at 571. In *Roake*, the court held that complaints about racial profiling and unlawful disciplinary action within the police force were employee speech. 849 F.3d at 346–47. It was enough that the employee "shared the complaints only with his employer, and the complaints focused exclusively on official misconduct by his fellow officer." *Id.* In *Kubiak*, in the court held that an officer was acting as an employee when she reported her own assault. 810 F.3d at 481–82. The court reasoned that an employee in her situation "would be expected to report the inappropriate behavior to a supervisor" and that it "makes even more sense to expect officers to report that a fellow officer acted violently" because that is part of an officer's duty to protect the public from harm. *Id.*[5]

Taken together, these four trends require dismissal of Fehlman's complaint. All of the speech at issue in this case involves allegations of perceived workplace misconduct by Mankowski or complaints about how Mankowski was running the police department. Although the complaint doesn't provide details about Fehlman's precise job title or duties, it is clear from his allegations that he was speaking in his capacity as an officer rather than as a citizen under

---

[5] *See also Davis v. City of Chicago*, 889 F.3d 842 (7th Cir. 2018) (officer's report accusing other officers of misconduct not protected); *Morales v. Jones*, 494 F.3d 590, 597–98 (7th Cir. 2007) (officer's conversations with assistant district attorney about police chief's alleged misconduct not protected); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 510–11 (7th Cir. 2007) (finding that a detective's report on suspicions of misconduct within the police department were made within his capacity as an investigator and a task force member, and therefore he did not speak as a citizen).

the law of this circuit. His statements were "intimately connected" to his job and related to subjects that fell within the general responsibilities of all police officers, such as protecting the public and enforcing the law. *See Kubiak*, 810 F.3d at 482 (statements that are "intimately connected" to plaintiff's job more likely to be made pursuant to professional duties).

The parties' briefs include a separate discussion of Fehlman's statements to the Police and Fire Commisscion, and they dispute whether the commission was part of Fehlman's "chain of command." This is a reference to *Nesvold v. Roland*, in which the court observed that "complaints directed beyond direct supervisors 'up the chain of command' also fall outside of the protections of the First Amendment." 37 F. Supp. 3d 1027, 1039–40 (W.D. Wis. 2014). Fehlman contends that we don't have enough information to determine at this point whether the commission was part of Fehlman's chain of command, and if it wasn't, that would suggest his statements to the commission were protected.

Fehlman's argument isn't persuasive. *Nesvold* didn't hold that any speech outside an employee's "chain of command" is citizen speech. Rather, *Nesvold*'s larger point was that context matters in deciding whether a plaintiff spoke as an employee or a citizen, and part of that context includes where the employee spoke and to whom. The same point has been made in other cases. For example, in *Lane v. Franks*, the Supreme Court held that "truthful sworn testimony, compelled by subpoena" is inherently "outside the scope of [an employee's] ordinary job responsibilities." 573 U.S. 228, 238 (2014). The Court reasoned that all citizens, not just public employees, have a duty to testify truthfully in a court proceeding. *Id.* at 238–39. *See also Chrzanowski v. Bianchi*, 725 F.3d 734, 739–40 (7th Cir. 2013) (public employee First Amendment claim based on grand jury testimony not barred by *Garcetti*).

11

More generally, courts have considered as relevant to the *Garcetti* analysis whether the employee made statements about alleged misconduct to an outside agency. *See Anderson v. Wisconsin Dept. of Health & Fam. Servs.*, No. 08-cv-82-slc, 2009 WL 196736, at *7 (W.D. Wis. Jan. 26, 2009) ("Federal courts have been more likely to conclude that an employee was speaking as a citizen when the employee was addressing an audience outside his or her employer."). For example, in *Houskins v. Sheahan*, the court concluded that an employee's complaint to her employer about workplace harassment was barred by *Garcetii*, but her report to the police about the same conduct wasn't. 549 F.3d 480, 491 (7th Cir. 2008). This was because any citizen, and not just a public employee, can file a police report about alleged criminal behavior. *See also Morales*, 494 F.3d at 598 (complaints to employer about workplace misconduct not protected; deposition testimony about same misconduct protected).

Fehlman's statements to the commission can't be compared to testimony in a court proceeding or a police report. Under Wis. Stat. § 62.13, each city of more than 4,000 residents must maintain a police and fire commission. Among other things, the commission has jurisdiction over the hiring, promotion, and discipline of members of police and fire departments, including the chief of police. *City of Madison v. Wisconsin Emp. Rels. Comm'n*, 2003 WI 52, ¶ 13, 261 Wis. 2d 423, 432–33, 662 N.W.2d 318, 322; *see also* Wis. Stat. § 62.13(3) and (5)(j) (describing commission's authority to appoint, suspend, and remove police chiefs). So as far as this case is concerned, the commission serves as a personnel board for the chief, not an agency that is completely separate from the workplace. This is similar to the situation in *Lloyd v. Mayor of City of Peru*, in which a police officer made allegations of misconduct about other officers to the city's "dispute-resolution body," called the Board of Works. 761 F. App'x

608, 612 (7th Cir. 2019). The court concluded that the officer's speech wasn't protected because he made "his accusations within the department's operational framework." *Id.*

In this case, Fehlman's complaint makes it clear that he requested a meeting with the commission after Mankowski reacted negatively to Fehlman's comments about Mankowski's job performance. Dkt. 8, ¶¶ 10–11. Fehlman brought two other police officers with him, and their purpose was to "address[] Mankowski's professional integrity and ethics." *Id.*, ¶ 12. In other words, Fehlman and the other offices were complaining to the commission about his effectiveness as a supervisor and as a police chief.

Under these circumstances, Fehlman was not simply acting in a manner that any concerned citizen could. He requested a special meeting to raise employment-related concerns, he was joined by other employees to present those concerns, and he directed his concerns to a body that had disciplinary authority over Mankowski. Fehlman doesn't allege that the meeting was open to the public. The court concludes that Fehlman's own allegations show that he was speaking to the commission as a police officer, not just a concerned citizen.

Fehlman resists dismissal on two other grounds. First, he says that an analysis under *Garcetti* is fact-sensitive, and most cases are decided on a motion for summary judgment rather than on a motion to dismiss. That is a fair point, and if Fehlman had pointed to facts that he could prove at summary judgment that would save his claim, the court would deny Mankowski's motion as premature. But Fehlman doesn't identify any additional facts consistent with his complaint that would show that he was speaking out as a citizen rather than pursuant to his duties as an officer. The law in this circuit is clear that the First Amendment doesn't protect disagreements with a supervisor about effective management or statements about misconduct related to a police officer's general duties to enforce the law and

13

protect the public. Fehlman's own allegations show that his speech falls within those unprotected categories. In similar circumstances, the court of appeals hasn't hesitated to apply *Garcetti* in the context of a motion to dismiss. *See, e.g.*, *Roake*, 849 F.3d at 346–47 (concluding at pleading stage that *Garcetti* barred public employee retaliation claim); *Aldous v. City of Galena, Illinois*, 702 F. App'x 439, 441–42 (7th Cir. 2017) (same); *Hatcher*, 829 F.3d at 538 (same); *Kubiak*, 810 F.3d at 481–82 (same); *Vose*, 506 F.3d at 568 (same).

Second, Fehlman says that he has stated a claim under the First Amendment because he "repeatedly alleges in his complaint that he was speaking as a private citizen while he was voicing his concerns about Mankowski." Dkt. 16, at 8 (citing Dkt. 8, ¶¶ 9, 12). But the court of appeals has rejected that precise argument:

> [The plaintiff] cannot escape the strictures of *Garcetti* by including in her complaint the conclusory legal statement that she testified "as a citizen . . . outside the duties of her employment." A plaintiff cannot rely on labels and conclusions. Nor are we bound to accept as true a legal conclusion couched as a factual allegation.

*Tamayo*, 526 F.3d at 1091–92 (citations omitted). It is the same in this case. Fehlman's more specific allegations in his complaint are inconsistent with the conclusion that Fehlman spoke as a citizen. So the court isn't required to accept that allegation as true.

CONCLUSION

*Garcetti* and its progeny have significantly limited a public employee's protected speech in the workplace. *See Haka v. Lincoln Cty.*, 533 F. Supp. 2d 895, 918–19 (W.D. Wis. 2008) ("[T]he effect of *Garcetti* in this circuit has been devastating for public employees asserting claims for First Amendment retaliation."). As a result, speech about many important issues can be left without constitutional protection, including speech about public corruption, *e.g.*,

*Sigsworth*, 487 F.3d at 507, misuse of government funds, *e.g.*, *Renken*, 541 F.3d at 774, harassment, *e.g.*, *Kubiak*, 810 F.3d at 482, and race discrimination, *e.g.*, *Roake*, 849 F.3d at 346–47. For better or worse, there is no "whistleblower carve-out from the category of unprotected employee speech." *Ulrey*, 941 F.3d at 259. So even if Fehlman's purpose in speaking out was to expose misconduct that threatened the police department and the community, his speech isn't protected by the First Amendment because he spoke as a police officer rather than a citizen. The court will grant Mankowski's motion to dismiss.

The general rule is that the plaintiff should have an opportunity to amend his complaint after a dismissal to fix the defects identified by the court. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). But in this case, the problem isn't that Fehlman failed to plead enough facts; the problem is that the facts he did plead show that he isn't entitled to relief. In that situation, amendment would be futile. In any event, Fehlman has already amended his complaint once, and he doesn't ask for permission to file a second amended complaint in the event that the court grants Mankowski's motion to dismiss. So the court will dismiss the complaint with prejudice and direct the clerk of court to close this case.

ORDER

IT IS ORDERED that defendant James Mankowski's motion to dismiss, Dkt. 13, is GRANTED and the case is DISMISSED for plaintiff Patrick Fehlman's failure to state a claim

upon which relief may be granted. The clerk of court is directed to enter judgment in Mankowski's favor and close this case.

Entered March 1, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge